May it please the Court, Bruce Layman for Shondy Heffner and Keaweula LLC. This is essentially a Dolan and Dolan land use exaction case. Who owns the land? The question of the hour. The allegation of the complaint is that we own the land and the state of Hawaii has no state law question that has to be determined by a state court? With all due respect, no, Judge Trott. There's several reasons for that. First of all, there's no there's absolutely no if the question goes to the issue of full and abstention, there's no unsettled issue of state law. The state law is clear that in order to for the state to try to invoke the provisions of the that there has to be some kind of that they have the burden of showing. First of all, that there was a road there. And second of all, that it was abandoned. There's no permission for the court to indulge in a presumption in favor of that. I think that's particularly true in the procedural status the case was under with the with essentially the court ruling on a motion to dismiss where there was no evidence presented. And by the by the state's admission, they concede that they don't present any evidence to show that there was a road there or that a road was abandoned. I guess my question about this is a very procedurally odd context for this, especially you're taking this claim to have arisen because it seems to me we we do need to know who owns the property to adjudicate that issue. So why couldn't the federal court have an evidentiary hearing as to on the question of as a predicate to determining the Fifth Amendment issue as to who owns the road? Well, I think I think that I think that would be an issue that the court could could entertain. But part of our point judge word law is that our damages are exactly the same regardless of who damages that we claim. We're not asking for just compensation. What we're asking for is is the damages that we have suffered as a result of the as a result of the state imposing an unconstitutional condition on us, which is a road. Then maybe it's not unconstitutional for them to be requiring you to be going through all these permit proceedings and not and adhering to the state rules for maintenance of the road. Well, I think it is unconstitutional regardless, Your Honor. And the reason is that under under Nolan and Dolan, if you impose a condition, you it has to bear. It has to be going going to a point that would have been entitled you to deny the permit in the that those cases are dependent upon an uncontested ownership by the land by the private landowner. And we don't know whether the state actually owns the easement across the property. That's a question of state law. And at this point, we don't know. In fact, as I read that condition 13, it talks about, well, if the state owns the land, then we will figure out where the easement goes. But it is premised upon the determination that the state owns the land here. Dolan, Nolan claims are premised upon your own. Well, yes. And as I say, that's that's our question. Who owns the land? Right. I understand that that is a question. And it may be that the judge would have to determine that question. Now, which judge have you had? Is there any sort of a quiet title action or anything pending in front of the district court? No, there is no quiet title action pending. And frankly, I don't conceive of our complaint as requiring a determination of that issue. But it can't be taking unless you own it. Well, there judge, there's nothing. There is nothing in the record to suggest that there is any doubt as to whether we own the property. Yes, there is. There's there there is statements that you don't own it. And there's the Highway Act. And we don't know its implications. I mean, I'm back to thinking. OK, so the state hasn't done what it's supposed to do under the Highway Act. Your client hasn't filed something to quiet title. So those those would be the two state things. So what we have here is a federal complaint in order to to assess the claims other than the ones that I think have absolutely no merit at all are if the judge has to know or determine who owns the property. Well, Your Honor, I don't think that's correct, because but I'm I don't have any problem if the if Judge Ezra decides on remand that that's a task that he should undertake. In any event, that shouldn't it shouldn't be subject to Pullman abstention because there is no unsettled issue of state law. I agree with you on Pullman abstention not being the appropriate way to go here, just struggling with what is the appropriate way to go in this posture that we're in. You're absolutely right, Judge. There there is a claim the state does in their in their opposition papers make a claim to ownership of the property. But my point is that in in the posture of a motion to dismiss where the allegation is that we own it, the the record as developed by the administrative reports filed by the defendants indicates that the reason that they're fining us is because we own the property. When we make the allegation that they don't own the property and then when they decline to present any evidence which they concede to having done that they own the property, then it seems like a game that they're playing because you're right, they can only assess you these fines if it's your property, yet they're also saying it's their property at the same time. Well and and your honor and our and our allegation is that it's pretextual because this is something that's being done all up and down the the coast on the big island of Hawaii, which is the sending of letters to landowners saying, oh by the way, there's a trail across your your property and that we claim ownership of it. But then but then in terms of the actual evidence, which is, as I say, number one was there a road and number two was that there's no the statute sets up two possible ways that they could own the road. One is that it had been dedicated to them, which requires a formal dedication procedure and acceptance. I don't think anybody has said that that applies or that there's been an abandonment. An abandonment consists of basically no exercise of any aspect of ownership over the road for a five-year period. So there's nothing there's nothing that they have not alluded to anything to show that that that that exists. So let me ask you a question. Your client purchased the 166 acres length in 1999 and wouldn't there necessarily have been a title report done in connection with that purchase? Yes, there was a report. Could you submit the title report to show evidence and if the state owned the road, certainly they would show that the title had that pinned on it or they'd show an easement in the report? Well, certainly that would be that would be part of our proof with respect to our ownership of the property, yeah. The state's position as they articulated, this isn't in the record, but what they said was well we've we found an old map of an area miles south of your property which refers to a shoreline trail heading north and then they also say and we and on the and on the land court application for the ahupua'a that is immediately south of yours we find reference to a road and that road you can tell from the title report goes up the hill. That was the Hawaiian way of utilizing land was basically to go mountains to sea up the ahupua'a so the roads tended to run in that direction. When you look at the record of this this this road what they refer to it as the jeep road. The jeep invented in the 1940s in connection with World War II. So your honor, it is something that I think that particularly in this procedural posture we're at least entitled to the benefit of under the South Hawaii law. If we were to agree with Judge Ezra and I share I'll just say outright I share Judge Wardlaw's hesitation about Pullman but let me entertain this for a moment. If we were to agree with Judge Ezra that Pullman abstention is appropriate, what proceedings would take place in the state either state court or state administrative proceeding that would then resolve the question as to ownership of a road or an easement or some passageway which would then allow the district judge after that's determined to figure out okay well all they have is an easement for a path and they claim a road they're trying to put a condition on a road what all they have you know but once we know that then we can actually look at a Nolan under Pullman what's going to happen in the state proceedings well there are no state proceedings pending at this point so one side or the other would have to initiate some kind of proceeding to in the action of a quiet title quiet title would be would be one form of it yeah and now Pullman in its ordinary form does not require that there be a state act and state proceeding now pending it can be conditioned upon one being instituted I believe that's correct your honor but there is the requirement that there be a sensitive issue of land use policy and that there be a unsettled question of state law is this one of those situations where nobody wants an answer yeah well it's it's uh it's a situation where um where obviously litigation is a very expensive proposition and I and I at this point the state has not come in and said has not tried to enforce what they claim to be our rights so we have continued to enjoy the privacy and our rights to exclude others so you're kind of hoping maybe the state files some kind of a proceeding to quiet title we're hoping that hope we're hoping that they won't that they will drop them at it that's what we're hoping about right yeah yeah well that's to be perfectly candid that's what we hope yeah okay you have you can reserve the rest of your time let's hear what the state has to say thank you thank you good morning your honor William Weinhoff deputy attorney general appearing on behalf of the state with respect to our claim of ownership of the trail the state does in fact claim that it owns the trail under chapter 264 which is the present version of the highways act of 1892 the state so in its concise statement of material facts filed pursuant to the local rules and that's in the excerpt of the record at page 83 and what can you do what avenues are available to you to establish the viability of that claim we could file an action for quiet title in state court what why don't we typically don't file that because there's a lots of uh there's lots of instances in which trails may or may not come about and um we prefer to have the other side file quiet title actions so each side is looking at the other across the 48th parallel and nothing has happened that's exactly right your honor and and the appropriate the appropriate action is as mr layman said is plaintiff is using it right now as long as we don't think we need to use it we're not going to file a quiet title action if he doesn't want to file a quiet title action that's no problem the problem is they got no business being in federal court the issue so anyway this there's no question how real or concrete or imminent is the threat of a two thousand dollar day fine for doing repairs to a road that arguably she owns thank you your honor you know after obviously we practiced this in my office and we thought about it and i was going to start off my argument with that because that is a red herring that needs to be put to bed period the two thousand dollar day fine what what plaintiff's briefs do is they blur the distinction between the three actions that the board took in attempt to raise this issue which is absolutely a non-issue and has not been an issue for several years the first board action was august 1999 excerpts of the record 258 fined hefter $1,300 in order to ordered her to file a conservation district use application seeking a conservation district use permit the second board action was in february 2003 at which time the board ordered to pay a fine of 607 dollars and submit a cdua which she had done but hadn't been accepted for at that time this is february 2003 the board threatened to impose fines of two thousand dollars a day if she did not comply well did not comply with what file a cdua and pay the fines that's in the excerpts of records at 162-163 but she did comply she paid the fines and she filed the cdua and she alleged that herself and that's in the excerpts of the records of page er 140 paragraph 36 the cdua was accepted there were no procedural or substantive that's correct your honor absolutely correct so all the business about the continuing fine goes away yes it went away now what happened the third time that they came around is they granted her the cdup okay the permit she filed the application cdua and they granted her the cdup the permit but they said the cdup will go away if you don't comply with all these conditions so the cdup could have gone away but that's now that's when the condition 13 came in that basically says even though you may own the property we can use it for any purpose we want for public access or the ala road you know i'm sorry i didn't really understand the court's question so the condition 13 right that's attached to the third cdup and condition 13 might as well we're taking your road that's what they says it that's what they say it is and it looks that way well we said it's not your honor and that's one of the reasons that's the state keeps saying things by fiat in this case if you interpret it it's condition 13 it says that it's can it's open for all public access and it can be used as part of this trail that the state's contemplating building that's one of the reasons we're not should be in state court your honor williamson specifically tells us that we have two prongs of it one is we got to go to state court first to find out what the state really did and we say we didn't they say we did i mean i understand you read it i read it too and and i can certainly understand the way the court reads it but we have emphatically said we're not we're not trying to take it if it's yours you can have it we get or the public gets to use it well you know bottom line judge judge trot um that condition 13 is very inartfully worded should not have been in there is a big mistake and it's just basically you know i mean i i agree with plaintiff on this it was very heavy-handed and and the state hasn't really looked good in this case have you withdrawn it then have you taken it out because we have this litigation well but if you're acknowledging that it's heavy-handed overreaching and shouldn't be in there maybe you wouldn't have this litigation if you took it out we tried to settle it i don't really want to get into settlement so now you've acknowledged to the court that that is an overreaching heavy-handed unsupported condition if it's read that way okay if it's read that way the way we have always said it's read is we think we own it and we'd like to work with you to find an alignment for it and their reaction what an alignment for it because we don't know where it even is oh alignment it's there we believe that there's a trail let me just go back to the highways act for a second because the highways act has been improperly quoted or explained to this court the highways act where it's now 264-1 has several parts part c says if a road is laid out by a abandoned or dedicated but part a says 160 says if the state laid it out then we own it and we've always owned it and that's where we are so the argument that it has to be abandoned or dedicated is just simply wrong it's a wrong reading of 264-1 and it misses the point of the statute now let me understand what your reading of condition 13 is okay do the language first it reads upon determining a reasonable location of the state-owned ala loa yeah the appellant shall work directly with that about to establish a final alignment of the ala loa and to establish public access and your reading of that clause my reading of that is that you can't you can't determine a reasonable location until you find out who owns it you're saying of the state-owned ala loa that's on the premise that it has been established that the state owns it that's right doesn't come into operation until there has been some sort of an authoritative determination that's right the state owns it that's right your honor and i would also and your reading is to make sure yes sir you're not reading any acceptance of the condition 13 by the landowner the overall landowner as any concession of state ownership absolutely not your honor it's very clear that they say they don't own it the record also indicates where the where they had the colloquy between council and between the board that's at er 65 that basically that what the board is saying look we think we own it the ags are telling us we own it i mean it wasn't me but somebody's telling them that they own it and um we understand that you don't but we have to assert our claim just like they have to assert your claim if we uphold judge esra what happens if you uphold judge esra what happens is what judge esra told them to do is they told the plaintiffs to file a quiet title and so they'll have to go back and file a quiet title action i would say also your honor i mean i think this is another area where plaintiffs and i and the state agree given now the court's decision in lingle i think the case has a stake through its heart judge judge esra was saying look we still got the substantially advances test and uh given the substantially advances test i got to find out who owns the property but now that the substantially advances test has a stake through its heart they're left with the um the the nolan dolan improper uh exaction case and basically the only thing they're saying is under nolan and dolan um you can you can get some remedy other than just compensation well there's some that's just wrong again lingle says and and a million other cases say judge trott was on the panel of daniel which i believe said basically the same thing and i for uh an improper taking is just compensation in federal court anyway and that's um there isn't any there isn't any exception for illegal exaction illegal exaction is simply a type of uh of uh regulatory taking what happened in nolan i was thinking about this further because it was a little puzzling and i don't think plaintiffs grasped the implication of the fact that both nolan and dolan came up from this from the state system what happened in nolan is the the court said no it wasn't a uh it wasn't a uh illegal exaction and so then they went over the court and the supreme court and the supreme court said yes it was and they simply reversed the reason they didn't reverse they didn't remand in nolan is because in california at the time there wasn't any inverse condemnation proceeding it had been just three weeks before that the united states supreme court had decided first english in in which first english and agents hagins both took both acknowledged at the time the sprit the california supreme court in hagins said there isn't any inverse condemnation that was that was um there was a discussion of that in the supreme court's case then in in um first english the same thing happened the california supreme court had said again and that there was uh no uh there was there was no inverse condemnation case and they just threw it out in first english they said well there can be a temporary taking as i'm sure you know but anyway the point is that in nolan the court the supreme court in california said this is not an illegal exaction case so the case um that was it then when they appealed to the supreme court the united states supreme court said it is an illegal exaction and so therefore the only remedy because in california there was no inverse condemnation proceedings they had they just said it's reversed and it's done with in dolan what they did is they remanded it to the organs to the oregon courts to figure out well what are they going to do are they going to pursue um are they going to pursue just compensation are they going to are they going to change the regulation so uh you know basically that's the that's the plaintiff's argument they said it is an illegal exaction case which first of all it isn't it's a quiet title case and second of all they said we alleged it below which they didn't absolutely never did they argue it below and third even if we get past those possibilities it's williamson county all the way i've got two i mean it seems as though there's possibly two different disputes going on here first one is what it started out to be which was to say for at least one brief shining moment from the plaintiff standpoint the state assumed that she owned the land but she simply needed a permit if she's going to cut some stuff put gravel on it and so on that's one dispute do you need a permit if you're in the conservation district to improve a road that belongs to you let me just respond to that your honor because i know that came up before and the answer is yes absolutely you can't do anything in the conservation that's the first dispute okay then we get a second dispute where the state starts to claim oh yeah and you know what uh it may or may not be along the path of where the jeep road runs uh but you know we own an easement across your land right and somehow you guys have managed to conflate these two fights um well i guess i'm going to say your honor and maybe i'm maybe i'm being unhumble or something but i don't think i've conflated him i think the plaintiff is trying to conflate him well but why do we have this condition 13 in one of the produce permits then oh okay okay fair enough maybe i'm i guess i'm being defensive it's arguable if you read it the way that plaintiffs do that the department has conflated them but i but but we we say they haven't and that's williamson county you got to go back and figure out what they are saying we can't they can't just come to federal court and say this is what you did i mean it's kind of an anomaly they're going to come in and say you did this and we did we didn't do that that's the first prong of williamson county you got to go sort that out in the state court and we said we didn't and geographically it occurs to me because at least as i read these papers that the location of the alaloa may actually be at some substantial distance from the from the so-called jeep road right but that would that that would make no difference really the the two should not be first up is that right that is to say the alaloa may be located in some place quite different from where the jeep road is it could be different i don't know about considerably different depends what you mean i mean it's going to be close to the close to the ocean but the jeep road and the alaloa may be two separate paths that's right it's possible so there really seems to me to you know these are two different fights i i agree it doesn't sound as though you're arguing that the jeep road is the alaloa um well i guess what what the state is saying and what i'm saying is that there's an alo there somewhere i don't necessarily i don't i haven't the jeep road yeah it might be and it might be out in the ocean uh well that was their argument they used to use to go by it might not be there at all right i mean i don't know but what i do know is or what i believe i know is it shouldn't be in federal court i beg your pardon all right um anybody have any other questions your honor i guess i have six seconds left but but you know i mean the the illusion has been to the other parts of the the uh claims not having that much merit and and and i agree with that i do want to say though that it is very important i mean what would i rep who i represent here is i represent the state i represent official capacity defendants and i represent individuals individual human beings who are sued for um a really wide range and very deleterious set of things including rico none of which have the slightest amount of merit and regardless of what happens with respect to the rest of the taking whether it goes back or proceeds or however it proceeds wherever it goes we really strongly urge the court to affirm the decision below that the rest of these claims against these people individually must can and should be and remain dismissed thank you um the um people that council refers to are the are the people who actually knew that there was no nexus between this condition and uh the application that was before them and went ahead anyway that's something that's the point that we make in our brief uh that defendant john specifically talked about so when we have a situation where it's not just the defendant proceeding knowing that there has to be a nexus and knowing that there is no nexus and then in addition and and we have this uh cited for the record with the threat that if we did not turn over the road that it would uh that we'd be subject to a two thousand dollar a day fine retroactively then we think that those individuals should be responsible when you say not turn over the road now do you mean the jeep road or do you mean some easement across the property thank you that's correct judge fletcher it's the it is whatever this alignment is that the state has required us to do well state has required you to do if it's determined that they own the property well i'm i'm very happy that council says that and i'm i'm very happy that he said below that we're not going to collect the two thousand dollar a day fine but it certainly has the earmarks of a situation where after we sue all of a sudden it's kind of like we're a wide receiver going for the ball and the cornerback mugs us and then puts his hands up and or maybe sends us flowers afterwards i think that the only reason that we are getting these concessions is because we have sued but if i can get back to your other point judge fletcher about um you know the interpretation of the state saying that that's not the way it not the way that it should be interpreted if you take a look at the next sentence in condition number 13 it says a final alignment for the aloha and lateral public access shall be established within three months of the board's action on this matter and again the aloha is what they refer to as the state owned aloha so that's not a provision that gives us any comfort on its face that uh there's going to be a procedure invoked for trying to determine title to the to the property this is the second sentence that maybe particularly alarmed you because we are that's assuming somehow that ownership can be authoritatively determined within three months well i i don't think that was even contemplated your honor i think that was an after-the-fact position that they took after uh after we filed suit and made the allegations that we've made was that three months after uh january 27th 2004 yes your honor i guess that never happened no that never happened uh so what what exactly are you asking us to do and what will you then we agree with you well basically asking for the um for the uh reinstatement of the um of the administrative appeal and the um and the rico claim a reversal of the pullman abstention if it becomes necessary to try title in the federal court action then obviously we would do that but we basically ask that our our case be reinstated uh in its entirety so that we can well no as i say i'm that's something that we would prove if we had to prove it but our theory of the case is that it is the okay it is the imposition of the unconstitutional condition that has caused us damages and that's what we're suing for if we affirm the judge's decision you're still going to get stalemate right because neither one of you is going to go into quiet tile well um the judge's disorder had required us to uh to initiate a quiet title action i didn't recall that if that's correct i didn't read it that way either but if that's correct then certainly we'll have to do that all right thank you counsel um hector versus young is committed and
judges: Trott, Wardlaw W. Fletcher